UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Marcy Rich,  ) | |
| Plaintiff,  ) | 2:14-cv-00213 JWS |
| vs.  ) | ORDER AND OPINION |
| Arizona Regional Multiple Listing Service, Inc.,  ) | [Re: Motion at Docket 6] |
| Defendant.  ) | |

## I.  MOTION PRESENTED

At docket 6, defendant Arizona Regional Multiple Listing Service, Inc. ("ARMLS") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing plaintiff Marcy Rich's complaint. Rich responds at docket 10. ARMLS filed a reply at docket 11. Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

Rich has worked for ARMLS as a Training and Support Specialist since 2002. She filed this action in February 2014 alleging two causes of action against ARMLS pursuant to Title VII of the Civil Rights Act of 1964. Claim one alleges religious discrimination through disparate treatment and a hostile work environment. Claim two alleges retaliation through disparate treatment.

A.  **Rich's disparate treatment allegations**
- In early 2008 Rich applied for a promotion to Director of Support Services. ARMLS denied her this promotion and instead gave the position to Barbara Hoffman, a lesser-qualified Christian individual.
- In late 2008 Rich asked for a promotion to manage the training department. ARMLS declined and gave the position to Hoffman instead.
- In November 2012 Rich asked to be considered for a different position if the company grew. She was told no.
- Between January 2012 and February 2013 Rich met six times with ARMLS's CEO Matthew Consalvo to ask for a promotion, among other things. Consalvo told Rich there were no vacancies, yet ARMLS created new positions that it filled with non-Jewish candidates.
- On or around November 2012 and February 2013, Rich asked for a new supervisor because her supervisor, Hoffman, exhibited religious hostility toward her. This request was denied, although ARMLS had previously allowed non-Jewish employees to change supervisors.
- In February 2013 Rich asked for a change in her job position. ARMLS told her that there were no vacancies, yet it created a new position and filled it with a non-Jewish candidate.
- In February 2013 Consalvo told Rich that she was not allowed to talk about her problems with Hoffman, including the problem of Hoffman's religious hostility, even though he allowed non-Jewish employees to complain to him about their managers.

B.  **Rich's hostile work environment allegations**
- In 2011 Hoffman, Rich's direct supervisor who identifies herself as a "born again" Christian, told Rich that she was "dead" because she did not "reveal Jesus" to herself.

- In December 2011 Hoffman gave Rich a poinsettia and sent an email to Rich's department wishing them a happy holiday whether they "celebrate the birth of Christ or the Hanukkah Candles." Hoffman also placed crosses on the invitations to the mandatory company holiday party and hired carolers who sang songs at the party with heavy Christian lyrics, including "Christ our Lord."
- After the 2011 holiday party, Rich sent an email to the staff that explained the meaning of Hanukkah. Kari Kuyper, who worked in Human Resources, responded to that email by telling Rich that it violated the company policy against using work computers for personal reasons, despite the fact that the company continued to send Christmas-related emails to the staff.
- In December 2012, Rich's coworker Chris Heagerty gave Rich a "very Christianity-oriented Christmas gift."
- In December 2012 Consalvo, then ARMLS's COO, told Rich that he "did not agree" with how she had decorated her cubicle the year before. In 2011, pursuant to the company's "annual cubicle/office holiday decorating activity," Rich had decorated her cubicle with greeting cards from her family that said "Happy Hanukkah" and with cut-outs of a dreidel and a menorah.
- In February 2013, Consalvo told Rich that he thought she would have a conflict with another employee because of her religion.

**C.  Rich's retaliation allegations**

Rich filed a charge of discrimination against ARMLS in February 2013. She alleges that after filing this charge ARMLS has retaliated against her by denying her "advancement opportunities" and subjecting her "to a more rigorous and arbitrary standard of performance evaluation not used with other employees."

### III. STANDARD OF REVIEW

Rule 12(b)(6), tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[1] To be assumed true, the allegations, "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[2] Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[3] "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[4]

To avoid dismissal, a plaintiff must plead facts sufficient to "'state a claim to relief that is plausible on its face.'"[5] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[7] "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[8] "In sum, for a complaint to survive a motion to dismiss, the

---

[1] *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[2] *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[3] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[4] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[6] *Id.*

[7] *Id.* (citing *Twombly*, 550 U.S. at 556).

[8] *Id.* (quoting *Twombly*, 550 U.S. at 557).

non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[9]

### IV.  DISCUSSION

**A.    Statute of Limitations**

A person who seeks relief under Title VII must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged unlawful employment practice or, if the aggrieved person initially institutes proceedings with a state or local administrative agency, within 300 days of the alleged unlawful employment practice.[10] Rich's complaint asserts that she timely filed a charge of employment discrimination with the EEOC (Charge No. 540-2013-01323).[11] ARMLS attaches as Exhibit A to its motion to dismiss a copy of the charge that Rich allegedly filed with the Arizona Attorney General's Office on February 19, 2013, and argues that several of Rich's claims are untimely.[12] Rich objects to the court's consideration of this document because it is a matter outside of her complaint.[13] Her charge document is not outside her complaint, however, because her complaint specifically refers to it and its authenticity is not disputed.[14]

---

[9] *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr*, 652 F.3d at 1216.

[10] 42 U.S.C. § 2000e–5(e)(1).  *See also Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008).

[11] Doc. 1 at 2 ¶ 3.

[12] Doc. 6 at 5.

[13] Doc. 10 at 8.

[14] *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002)).

### 1. Rich's disparate treatment claims

Disparate treatment is where an employer "treats some people less favorably than others because of their race, color, religion, sex, or national origin."[15] Rich's disparate treatment claim alleges that ARMLS failed to promote her because she is Jewish. ARMLS argues that this claim is untimely to the extent it is based on events that occurred prior to April 25, 2012 (i.e., 300 days before she filed her claim). Rich relies on *Anderson v. Reno*,[16] and contends that acts that occurred before the limitations period are nevertheless actionable under the "continuing violation" doctrine. But as ARMLS and, more importantly, the Ninth Circuit point out,[17] the Supreme Court overruled *Anderson* in *National Railroad Passenger Corp. v. Morgan*.[18] After *Morgan*, discrete discriminatory acts (including an employer's "failure to promote") are actionable only if they are not time barred—even where they are part of a series of discriminatory acts that includes acts that are not time barred.[19] Thus, Rich's claim that ARMLS twice failed to promote her in 2008 because of her religion is time barred.

### 2. Rich's hostile environment claim

Claims based on a hostile work environment fall within Title VII's protections against discrimination.[20] In order to prevail on her hostile work environment claim, Rich must establish three elements: (1) she was subjected to "verbal or physical conduct of a

---

[15]*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).

[16]190 F.3d 930, 936 (9th Cir.1999).

[17]*See RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2002) ("*Morgan* held that 'discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.' Accordingly, appellants cannot establish liability for events occurring prior to the limitations period on a continuing violation theory.") (quoting *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

[18]536 U.S. at 113.

[19]*Id.* at 113–14.

[20]*Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).

harassing nature;" (2) this conduct was unwelcome; and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."[21]  For statute of limitations purposes, hostile environment claims are treated slightly differently than discrete disparate treatment claims.  This is because by their nature hostile environment claims are usually based on "the cumulative effect of individual acts" and not on any one event that occurred on a particular day.[22]  To determine whether particular acts are part of a timely hostile environment claim, courts employ a two-step analysis.  They first decide whether the acts are "part of the same actionable hostile work environment practice" and then, "if so, whether any act falls within the statutory time period."[23]  When making this first determination, courts consider whether the acts "were 'sufficiently severe or pervasive,'" and whether the various events amounted to "the same type of employment actions, occurred relatively frequently, [or] were perpetrated by the same managers."[24]

As ARMLS points out, only the following three events that make up Rich's hostile environment claim occurred after April 25, 2012: (1) in December 2012 Rich received a "very Christianity-oriented Christmas gift" from a coworker; (2) in December 2012 Consalvo told Rich that he did not approve of her Hanukkah-related cubicle decorations; and (3) in 2013 Consalvo told Rich that she might have a conflict with another employee because of her religion.  The court's task is to determine whether any of these events are sufficiently linked to any of the prior events alleged in Rich's complaint such that they form the same actionable hostile work environment practice.

---

[21]*Pavon v. Swift Transp. Co.*, 192 F.3d 902, 908 (9th Cir. 1999) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

[22]*Morgan*, 536 U.S. at 115.

[23]*Id.* at 120.

[24]*Porter v. California Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) (quoting *Morgan*, 536 U.S. at 116, 120).

Turning first to the Christmas gift that Rich received, Rich does not specify what this gift was nor does she explain what about it was "very Christianity-orientated." But even assuming that the gift was severely insulting to her religious beliefs, as she alleges, this act was not perpetrated by either of her superiors (Hoffman and Consalvo) who were involved in the earlier acts. This was a discrete act perpetrated by one of Rich's coworkers. Consalvo's alleged comments in 2012, on the other hand, are consistent with his and Hoffman's earlier comments that form the basis of Rich's hostile work environment claim. These comments, like the others made by Consalvo and Hoffman, arguably demonstrate ARMLS's criticism or disapproval of Rich because of her religion. Consalvo's and Hoffman's derogatory comments are part of the same allegedly hostile work environment practice. Rich's challenge to that practice is timely.

**B.  Exhaustion of Remedies**

An aggrieved individual cannot bring a Title VII action against her employer until she has exhausted the administrative process.[25] The purpose of this exhaustion requirement is "to provide an opportunity to reach a voluntary settlement of an employment discrimination dispute."[26] Although the allegations contained in the individual's administrative charge "operate to limit the scope of any subsequent judicial complaint,"[27] courts liberally construe charges that were not prepared by lawyers.[28]

ARMLS argues that Rich did not exhaust her administrative remedies with respect to her hostile work environment claim because "nowhere in her charge does she identify any conduct which could be perceived by any reasonable person to

---

[25] *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (citing 42 U.S.C. § 2000e-5(b), (f)(1); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir.2002); 29 C.F.R. § 1601.28).

[26] *Blank v. Donovan*, 780 F.2d 808, 809 (9th Cir.1986).

[27] *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir.1996).

[28] *See Chacko*, 429 F.3d at 509.

suggest that she was subjected to a hostile work environment at ARMLS."[29]  Rich responds by noting that the charge form does not have a box to check for "Hostile Work Environment" and, in any event, Rich sufficiently put ARMLS on notice of her hostile work environment claim by alleging that she had numerous discussions with Consalvo about the office "culture."[30]  The court agrees.  Although Rich's charge is short on details regarding what she meant by ARMLS's "culture," the fact that she checked the box next to "continuing action" and charged ARMLS with having a "culture" that discriminated against her on the basis of religion, Rich exhausted her administrative remedies with regard to her hostile work environment claim.

**C.  Disparate Treatment**

ARMLS argues that Rich has failed to allege a valid disparate treatment claim. For Rich to allege a prima facie case of disparate treatment, she must establish that she (1) belongs in a class protected by Title VII, (2) was qualified for the position, (3) was subject to an adverse employment action, and (4) similarly situated individuals outside her protected class were treated more favorably.[31]  ARMLS contends that Rich's complaint fails to allege facts that satisfy the third element because she has not been demoted or suffered a decrease in pay.  This argument lacks merit.  Rich's complaint alleges that ARMLS failed to promote her because of her religion; this is an adverse employment action.[32]

---

[29]Doc. 6 at 5.

[30]Doc. 10 at 10.

[31]*Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[32]*Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) ("Among [the] employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion.").

**D.     Hostile Work Environment**

Next, ARMLS argues that Rich failed to sufficiently allege the "extreme type of conduct necessary to establish a hostile work environment claim."[33] To determine whether the alleged conduct was sufficiently severe or pervasive to support a hostile work environment claim courts employ a totality of the circumstances test.[34] The circumstances that courts consider "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[35] "Offhand comments" and "isolated incidents (unless extremely serious)" are not enough.[36] In order to prevail, the plaintiff must demonstrate a working environment that is both subjectively and objectively perceived to be abusive.[37] In sum, Rich must "show that she perceived her work environment to be hostile, and that a reasonable person in her position would perceive it to be so."[38]

At the motion to dismiss stage, Rich need not support her allegations with evidence, but her complaint must allege sufficient facts to satisfy each element of a hostile work environment claim.[39] ARMLS raises two arguments for why, from an objective standpoint, Rich's allegations do not describe sufficiently abusive workplace conditions. First, it argues that the majority of Rich's claims involve Christmas-related

---

[33] Doc. 6 at 7.

[34] *Harris v. Forklift Sys.*, 510 U.S. at 23.

[35] *Id.*

[36] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

[37] *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir.1995) (citing *Harris*, 510 U.S. at 21–22).

[38] *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005) (citations omitted).

[39] *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (citing *Twombly*, 550 U.S. at 570; *Williams v. Boeing Co.*, 517 F.3d 1120, 1130 (9th Cir. 2008)).

activities, not religion. This argument lacks merit. Title VII defines the term "religion" to include "all aspects of religious observance and practice, as well as belief."[40] Although some traditional symbols of Christmas, such as the Christmas tree or perhaps a poinsettia plant, have arguably assumed a primarily secular significance in modern society,[41] ARMLS cannot seriously contend that a statement about "the birth of Christ," the crosses on the holiday party invitations, and a song about "Christ our Lord," do not contain an aspect of religious observance, practice, or belief.[42]

Second, ARMLS argues that Rich's allegations "do not come anywhere near the level of the extreme conduct necessary to alter the terms and conditions of Rich's employment" because they describe only "a handful of events that occurred over a very short period of time." When assessing the objective portion of a plaintiff's claim, courts assume the perspective of the reasonable victim.[43] This inquiry "is not, and by its nature cannot be, a mathematically precise test."[44] On one hand, workplaces "are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life."[45] But on the other hand, the harassment need not be "unendurable" or "intolerable;" it need only be "of

---

[40] 42 U.S.C. § 2000e(j).

[41] *See Cnty. of Allegheny v. Am. Civil Liberties Union Greater Pittsburgh Chapter*, 492 U.S. 573, 616 (1989) ("The Christmas tree, unlike the menorah, is not itself a religious symbol. Although Christmas trees once carried religious connotations, today they typify the secular celebration of Christmas.").

[42] *See, e.g., Lynch v. Donnelly*, 465 U.S. 668, 675 (1984).

[43] *Brooks*, 229 F.3d at 923–24.

[44] *Harris*, 510 U.S. at 22.

[45] *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).

such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse."[46]

ARMLS relies in large part on *Shabat v. Blue Cross Blue Shield of the Rochester Area*.[47] There, the plaintiff alleged that a coworker had asked him whether "people from the Mideast beat their wives;" over a year later his supervisor asked him "How come you cannot accept Jesus Christ as the messiah, the son of God? After all, he was a Jew;" a few months later that same supervisor told him that there "is no such holiday" as Yom Kippur; and over a year later the human resources manager stated that "Israelis are blunt, direct, candid, and honest people" and that Americans cannot handle this "brand of honesty."[48] The district court held that "[g]iven the infrequency of these remarks, and the fact that most of the incidents were relatively minor, . . . no factfinder could reasonably conclude that plaintiff was subjected to a hostile work environment for purposes of Title VII."[49]

In contrast, in *Feingold v. New York*,[50] the plaintiff alleged that he was subjected to anti-Semitic treatment at work that included: receiving inferior training; being called not by his own name but by other "Jewish-sounding names;" in "nearly every" conversation that took place in his presence a coworker "would say something about his religion or hers or tell stories about a Jewish person;" the same coworker stated, "What's wrong withe these [Jewish] people?"; that same coworker "regularly proclaimed 'Praise Jesus' and 'Hallelujah,' and asked other employees to join her in these affirmations;" another coworker described food that she ate as "Jewish pig food;" and

---

[46]*Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir.2003).

[47]925 F.Supp. 977, 981 (W.D.N.Y. 1996), *aff'd sub nom. Shabat v. Billotti*, 108 F.3d 1370 (2d Cir. 1997) (unpublished table opinion).

[48]*Id*.

[49]*Id*. at 984.

[50]366 F.3d 138, 144 (2d Cir. 2004).

Christian symbols were displayed in the office year-round.  The Second Circuit held the plaintiff had established discrimination that was sufficiently frequent (almost daily) and severe (stemming from anti-Semitic hostility) to allow a fact-finder to conclude that a reasonable employee in his position would have experienced discriminatory intimidation, ridicule, and insult because he was Jewish."[51]

ARMLS's argument is premature.  Each of the cases upon which it relies was decided at the summary judgment, not motion to dismiss, stage.[52]  The court's job at this stage is to evaluate the adequacy of Rich's complaint, not her evidence.  Viewing the totality of the circumstances that Rich alleges in her complaint, and all of the reasonable inferences that flow from them, Rich plausibly suggests that the discrimination she allegedly experienced at ARMLS's hands was sufficiently severe or pervasive to alter the conditions of her employment for the worse.

**E.    Retaliation**

Finally, ARMLS argues that Rich has failed to allege a valid retaliation claim because she only alleges that she has been subjected to more rigorous or arbitrary performance evaluations, not a "decrease in pay or any other type of cognizable adverse employment action."  In response, Rich correctly asserts that an undeserved negative performance review may constitute an adverse employment decision.[53]  This is of no help to Rich, however, because she fails to allege that she received a negative performance review.  However, Rich also alleges that ARMLS turned her down for

---

[51]*Id*. at 150.

[52]*Shabat,* 925 F.Supp. at 981; *Lara v. Raytheon Corp.*, No. 6:10-CV-1574-ORL-28KRS, 2011 WL 3919602, at *1 (M.D. Fla. Sept. 7, 2011); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 795 (9th Cir. 2003); *Rivera v. Puerto Rico Aqueduct & Sewers Auth.*, 331 F.3d 183, 187 (1st Cir. 2003); *Belgrove v. N. Slope Borough Power, Light, & Pub. Works*, 982 F. Supp. 2d 1040, 1043 (D. Alaska 2013).

[53]*See Brooks*, 229 F.3d at 928 (9th Cir. 2000) ("Among [the] employment decisions that can constitute an adverse employment action are . . . issuance of an undeserved negative performance review.").

promotion because she filed the EEOC charge.  This claim is inartfully worded,[54] but can be fairly read to allege a refusal to promote in retaliation for bringing the EEOC charge.  As discussed above, the refusal to promote may constitute an adverse employment decision.

## V.  CONCLUSION

Based on the preceding discussion, ARMLS's motion to dismiss at docket 6 is GRANTED in part and DENIED in part.  Rich's claim of religious discrimination based on ARMLS's failure to promote her in 2008 is DISMISSED as time barred.  In all other respects ARMLS's motion is DENIED.

DATED this 29th day of September, 2014.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

---

[54]Doc. 1 at 11 ¶ 53 ("As a direct result of her complaint of unlawful discrimination, Plaintiff has failed to receive advancement opportunities . . . .").